# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

SENECA BEVERAGE CORPORATION,

                                    Plaintiff,

            -vs-                                 DECISION AND ORDER

HEALTHNOW NEW YORK, INC., RMTS                   04-CV-6081 CJS
ASSOCIATES, LLC and TRUSTMARK
INSURANCE COMPANY,

                                    Defendants.

## APPEARANCES

For the Plaintiff:                      Scott D. Moore, Esq.
                                        Moore, Woodhouse & Pawlak LLP
                                        150 Lake Street
                                        Elmira, New York 14901
                                        (607) 734-6191

For the Defendant Healthnow New York,   Frank V. Balon, Esq.
Inc.:                                   Webster Szanyi LLP
                                        1400 Liberty Building
                                        Buffalo, New York 14202
                                        (716) 842-2800

## INTRODUCTION

**SIRAGUSA, J.** This State law breach of contract case, with additional claims under Federal law, is before the Court under federal question jurisdiction to decide defendant HealthNow New York's ("HealthNow") motion (# 20) for summary judgment and plaintiff's application (# 24) for discovery pursuant to Federal Rule of Civil Procedure 56(f). For the reasons that follow, the Court denies plaintiff's motion, grants HealthNow's application, and dismisses this case.

## PROCEDURAL HISTORY

Plaintiff commenced its action in New York State Supreme Court, Chemung County, by filing a summons and complaint and serving the same on all defendants. The State court complaint alleged two common law claims of breach of contract against all defendants. Defendant HealthNow filed a notice of removal in this Court contending that plaintiff's State contract claims were preempted by the Federal Employee Retirement Income Security Act (ERISA), Pub.L. 93-406, Title I, § 2, Sept. 2, 1974, 88 Stat. 832. (Notice of Removal (Mar. 2, 2004)). HealthNow then filed an answer in this Court to the original complaint, alleging ERISA as a defense to the State claims. Subsequently, plaintiff filed an amended complaint ("complaint"), that alleged four causes of action against defendants: (1) breach of contract against RMTS[1] and Trustmark; (2) an ERISA breach of fiduciary duty claim against RMTS and Trustmark; (3) an ERISA breach of fiduciary duty claim against HealthNow; and (4) a breach of contract claim against HealthNow. In an earlier decision (# 16) the Court granted RMTS's and Trustmark's motion to dismiss the first and second causes of action.

Now before the Court is HealthNow's motion (# 20) seeking summary judgment on the third and fourth causes of action. In response to HealthNow's motion, plaintiff filed a cross-motion seeking, "[a]n Order granting Plaintiff time to conduct discovery prior to answering Motion for Summary Judgment of Defendant HealthNow New York, Inc." (Pl.'s Notice of Mot. (Dec. 3, 2004) (# 24)) and supported by a declaration from plaintiff's counsel in which he stated, "[n]o discovery has been conducted to date and at

---

[1]RMTS Associates, LLC and Trustmark Insurance Company were both defendants in the action when it was originally removed from State court.

the conference set for establishing a discovery schedule, counsel for Defendant HealthNow advised the Magistrate that a motion for summary judgment was going to be filed" (Moore Decl. (# 25) ¶ 2).

Defendant opposed the cross-motion for discovery, and the Court heard oral argument on both motions on December 21, 2004. At oral argument, plaintiff's counsel asserted that the written contract between Seneca Beverage and HealthNow had been orally modified with respect to the point at contention in this lawsuit: whether HealthNow was obligated to provide certain claims information to Seneca Beverage's stop-loss insurer. The Court granted plaintiff additional time to file an affidavit in support of its position.

On December 28, 2004, plaintiff's counsel filed two affidavits and a declaration. The two affidavits were by Debra Maurey ("Maurey") and John Holleran ("Holleran"). At the time of the formation of the Stop Loss contract, Maurey was an employee of Seneca Beverage, and Holleran was an employee of Perry & Carroll, Inc.[2] Both Maurey and Holleran said they had been involved in discussions between plaintiff and defendant regarding the Stop Loss contract. (Maurey Aff. ¶ 1-2; Holleran Aff. ¶ 1-2.) Additionally, plaintiff's counsel filed a declaration containing a summary of his conversation with Kraus, Sales Manager of HealthNow. Kraus refused to sign his name to the statements that he made to counsel (Moore Decl. (# 32) ¶¶ 2, 5 & 7), and counsel's recitation is not evidentiary proof in admissible form necessary to raise an issue of fact in opposition to a summary judgment motion, FED. R. CIV. P. 56(e).

---

[2]Other than stating that Holleran was an employee of Perry & Carroll, Inc., the relevance of his employment with that corporation is not revealed in his affidavit.

On February 10, 2005, the Court heard further oral argument with respect to plaintiff's motion for discovery under Federal Rule of Civil Procedure 56(f) and whether there was any proof of an oral modification to the written contract between HealthNow and Seneca Beverage.

## FACTUAL BACKGROUND

Though the Court views the facts in the light most favorable to the non-moving party, plaintiff did not file any document contesting HealthNow's statement of facts filed pursuant to Local Rule.[3] Although plaintiff did file a motion for discovery pursuant to Rule 56(f), as indicated above and discussed below, the Court is denying the motion due to plaintiff's failure to make the requisite showing.

Since plaintiff has not opposed[4] any of the asserted facts in HealthNow's statement, then by operation of Local Rule 56.1(c), HealthNow's assertions are deemed admitted and are incorporated herein in their entirety:

    1. Plaintiff Seneca Beverage Corporation and Defendant Health-Now New York, Inc. entered into an Administrative Services Agreement, in 1999, whereby HealthNow agreed to perform certain administrative

---

[3]*See* Western District of New York Local Rule of Civil Procedure 56.1. Two subdivisions of that rule apply here:

    (b) The papers opposing a motion for summary judgment shall include a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.

    (c) All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

[4]A week before oral argument, plaintiff made a request for permission to file a statement of facts, which the Court denied as untimely. The motion scheduling order issued in this case clearly set the deadline for opposing papers at December 6, 2004. Plaintiff's request was received well after that date.

functions including determining eligibility for benefits and processing claims for Plaintiff's self-funded employee benefit plan. (*See* Exhibit A annexed to Declaration of Frank V. Balon, Esq.)

2. HealthNow did not have ultimate authority with respect to the determination of benefit claims made under Plaintiff's employee benefit plan. Instead, HealthNow determined eligibility for benefits and processed claims in accordance with the rules and criteria established by Plaintiff. (*See id.*; Exhibit B annexed to Declaration of Frank V. Balon, Esq.). In this regard, Section 7.7 of the Administrative Services Agreement unambiguously provides that "HealthNow shall have no power to add to, subtract from or modify any terms of the Plan, or to change or add any benefit provided under the Plan or to waive or fail to apply any requirements for eligibility for a benefit under the Plan…." (Exhibit A annexed to Declaration of Frank V. Balon, Esq.)

3. Plaintiff, which is designated by Section 1.5 of the Administrative Services Agreement as the "plan administrator" and "named fiduciary" of its employee benefit plan, expressly retained final discretionary authority with respect to contested benefit claims pursuant to Section 3.3 of the Agreement and sole responsibility for the payment of all claims pursuant to Section 1.3 of the Agreement. (*Id.*)

4. At approximately the same time that Plaintiff and HealthNow entered into the Administrative Services Agreement, HealthNow assisted Plaintiff in obtaining stop loss insurance coverage through Co-Defendant Trustmark Insurance Company in order to insure Plaintiff against costs associated with benefit claims that exceeded a certain dollar amount. (*See* Exhibit B annexed to Declaration of Frank V. Balon, Esq.; Dkt.# 4.)

5. While HealthNow assisted Plaintiff in obtaining stop loss insurance coverage through Trustmark Insurance Company, HealthNow was not a party to the stop-loss insurance contract ultimately entered into between Plaintiff and Trustmark. (See Exhibit B annexed to Declaration of Frank V. Balon, Esq.; Exhibit A to Dkt.# 4; Dkt.# 16.)

6. Rather, only Plaintiff and Trustmark were parties to the stop-loss insurance contract. (See Exhibit B annexed to Declaration of Frank V. Balon, Esq.; Exhibit A to Dkt.# 4; Dkt.# 16). As such, contrary to Plaintiff's allegations, HealthNow was not required by the terms of the stop-loss insurance contract to provide information and/or reports to the stop-loss insurance carrier.

7. Additionally, the Administrative Services Agreement, which controlled the relationship of Plaintiff and HealthNow during the relevant

period, did not require HealthNow to provide any information and/or reports to the stop-loss insurance carrier. (See Exhibits A and B annexed to Declaration of Frank V. Balon, Esq.)

(HealthNow's Statement of Undisputed Material Facts Pursuant to Federal Rules of Civil Procedure, Local Rule 56.1 (Nov. 11, 2004).)

## STANDARDS OF LAW

### *Summary Judgment Standard*

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley,* 274 F.3d 677 (2d Cir. 2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once that burden has been met, the burden then shifts to the non–moving party to demonstrate that, as to a material fact, a genuine issue exists. FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S. CT. 1160 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. FED. R. CIV. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition,

contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

### Discovery under FED. R. CIV. P. 56(f)

When a party opposes summary judgment on the basis that discovery is required, pursuant to Federal Rule of Civil Procedure 56(f), it is well settled that the opposing party must (1) specify the nature of the uncompleted discovery; (2) demonstrate how the facts sought are reasonably expected to create a genuine issue of fact; (3) explain what efforts it has made to obtain those facts; and (4) explain why those efforts were unsuccessful. *See Ayers v. Stewart*, 101 F.3d 687 (2nd Cir. 1996); *Estevez-Yalcin v. Children's Village*, 331 F. Supp. 2d 170 (S.D.N.Y. 2004); *Sigel v. U.S.*, 2003 WL 21696218 (E.D.N.Y. 2003).

A district court's decision to deny a request for discovery under Rule 56(f) is reviewed on appeal using the "abuse of discretion" standard. *Gualandi v. Adams*, 385 F.3d 236, 244 -245 (2d Cir. 2004).  However, in this regard, it is clear that as a general rule, summary judgment is strongly disfavored where the non-moving party has had no opportunity to conduct discovery. *Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003) ("[O]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.") (*quoting Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000); *see also, Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (6th Cir. 2002) ("If the non-movant makes a proper and timely showing of a need for discovery, the district court's entry of summary judgment without permitting him to conduct any discovery at all will constitute an abuse of discretion.").

The Second Circuit has indicated that a Rule 56(f) application should ordinarily be granted, and discovery allowed, where the party opposing summary judgment has not had an opportunity for discovery:

> FED. R. CIV. P. 56(F) provides, as interpreted by court opinions, that when a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion. Accordingly, we have held that summary judgment should only be granted if *after discovery*, the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof.

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d at 303 (emphasis in original; citations and internal quotation marks omitted). One district court recently noted, in connection with a Rule 56(f) application, that

> [t]here is a critical distinction . . . between cases where a litigant opposing a motion for summary judgment requests a stay of that motion to conduct *additional* discovery and cases where that same litigant opposes a motion for summary judgment on the ground that it is entitled to an opportunity to *commence* discovery.

*Crystalline H2O, Inc. v. Orminski*, 105 F. Supp.2d 3, 6 -7 (N.D.N.Y. 2000) (emphasis in original).

## ANALYSIS

Applying the principles of law, above, to the facts of this case, the Court concludes that this is the "rarest of cases" in which summary judgment may be granted without discovery. Plaintiff has not demonstrate how the facts sought are reasonably expected to create a genuine issue of fact.

***Plaintiff's Motion for Discovery per Rule 56(f)***

In its affirmation filed in support of its Rule 56(f) motion, plaintiff asserts the

following:

> HealthNow served as [p]laintiff's agent in arranging the stop loss coverage
> and potentially received a commission for placing the coverage with
> Trustmark.

> Moreover, the stop loss contract was sent to the [p]laintiff by [d]efendant
> HealthNow and presumably [sic.] reviewed the contract and noted that
> [d]efendant HealthNow was named as the Plan Administrator in the
> contract.

> When [p]laintiff advised [d]efendant HealthNow to submit a claim to
> Trustmark [the stop loss insurer], [d]efendant HealthNow took actions to
> obtain a confidentiality agreement with [d]efendants Trustmark and RMTS
> presumably to satisfy the requirements of the Health Insurance Portability
> and Accountability Act ("HIPAA").

> When [p]laintiff renewed its coverage with [d]efendant Trustmark,
> [d]efendant HealthNow provided the disclosure information necessary to
> supply to [d]efendant Trustmark to determine the premium.

> Defendant HealthNow was the only party that had the necessary
> information required by the stop loss carrier to evaluate premium
> underwriting.

> Clearly, there was communication, both verbal and written, between the
> [d]efendants and potential internal documents that might lend support to
> [p]laintiff's claim that [d]efendant HealthNow undertook to serve as the
> Plan Administrator with regard to the stop loss contract.

(Moore Decl. (# 25) ¶¶ 4–9.) In addition to the above, plaintiff has also alleged its

unsuccessful efforts to obtain the sought for information by consent of the opposing

party's attorney. (*Id.* ¶ 3.)

Plaintiff's declaration appears to raise an issue of whether a contract or other

unwritten agreement existed between it and HealthNow, whereby the latter consented

to be bound by the Stop Loss contract provision that required plaintiff to supply certain

information to the stop-loss insurer. Plaintiff posits the speculation of its counsel that an agreement between itself and HealthNow, to the effect that HealthNow would undertake plaintiff's responsibilities as outlined in the Stop Loss contract, might exist and that discovery, in the form of interrogatories of the opposing parties' witnesses, might reveal its existence. However, if plaintiff and HealthNow did have such an agreement, then plaintiff should have access to a witness or documents tending to show the existence of such an agreement. Yet, plaintiff has submitted nothing tending to show either the existence of a genuine issue of fact on this point, or an agreement with HealthNow pertaining to the Stop Loss contractual requirements.

This case involves a written contract between Seneca Beverage and HealthNow, and a written contract between Seneca Beverage and its Stop Loss insurer. During the December 21, 2004 argument, the Court asked counsel whether there were any oral agreements and whether the written agreement could be modified orally. Counsel requested time to respond.

As previously indicated, plaintiff subsequently filed affidavits by Maurey and Holleran. However, both of those affidavits contain conclusory statements directly in contradiction to the written contract between Seneca Beverage and HealthNow. More importantly, however, is that neither indicates that plaintiff and defendant either came to an agreement obligating HealthNow to provide information to the stop-loss insurer under the terms of the Stop Loss contract, or that the Stop Loss contract had been subsequently modified to obligate HealthNow under the provision requiring Seneca Beverage to provide certain medical claims information to the stop-loss insurer.

The only contract between Seneca Beverage and HealthNow presented on this motion is the Administrative Services Agreement ("Agreement") (attached to Balon Decl. (# 20) as Ex. A). The pertinent section of that agreement are 1.5, 1.8 and 7.4. Section 1.5 states, "[e]mployer is the plan sponsor and administrator of the Plan" and "Employer is the named fiduciary with respect to the Plan." (Agreement, at 3-4.) Further, section 1.8 states, "[e]mployer shall be responsible for securing stop-loss insurance in connection with its benefit payment liability under the Plan and shall be responsible for providing the stop-loss insurance carrier(s) with accurate information required or necessary for the underwriting of any insurance issued to Employer." (Agreement, at 3.) This clause provides even greater notice to plaintiff of its ultimate responsibility to provide the stop-loss insurer with the necessary reports.

More specifically in regards to oral modification, section 7.4 states, "No altercation or modification of the terms and conditions of this Agreement shall be valid or of any force or effect unless it is expressed in a written memorandum executed for Parties by persons duly authorized to do so." (Agreement, at 9.) Section 7.4 of the Agreement makes it clear that Seneca Beverage's argument on a theory or oral amendment is without support.

Turning to the Stop Loss contract between plaintiff and Trustmark, the Court notes that Section XI of that contract states, "[n]o agent has the authority to change the Contract or waive any of its provisions. All changes in the Contract must be approved by an officer of the Company and be evidenced by an endorsement on the Contract or by an amendment to the Contract signed by the Contract Holder." (Stop Loss contract at 11.) No proof has been submitted showing that the necessary conditions for a change in

accord with the Stop Loss contract provisions have been met. Moreover, part XVII(C) of the Stop Loss contract states, "[t]he Contract Holder may name a third party to do certain functions, such as claims administrator or reporting; but, the Contract Holder remains wholly responsible for all the agreements made in this Contract." (Stop Loss contract at 12.) This clause specifically address the present issue. Plaintiff had the option of delegating its duties to another, but ultimately it was plaintiff's responsibility to submit -the required reports to the Stop Loss carrier rested on it.

Unlike a case involving oral testimony, the relevant evidence here involves written contracts, which are already before the Court. Although the Court permitted additional time for plaintiff to present evidence that those contracts were modified, upon closer inspection of the contracts, it appears that neither could be orally modified, and plaintiff has not alleged that there exists a written modification that discovery would produce. Further, from a logical standpoint, if such a written modification existed, it would most likely be in plaintiff's possession already.

**Contract Claims**

With regard to its contract claims against HealthNow, plaintiff alleges a duty on HealthNow's part to enforce the provisions of the agreement, which plainly require *plaintiff* to provide Trustmark with monthly reports. Complaint ¶ 28.[5] It was upon plaintiff or its plan administrator, not HealthNow, that the contract imposed a duty to submit monthly reports to Trustmark (referred to as the "Company" in the contract). Contract Part III. B. ("The Contract Holder or Plan Administrator must give the Company a

---

[5]A copy of the Stop Loss contract is appended to the original complaint.

statement. . . ."); Part V. ("The Plan Administrator shall give the Company a written statement. . . ."); Part V.(5) ("the Plan Administrator must also notify the Company immediately when it discovers any claim" for cancer treatment.). The plan administrator is listed in a front page of the Stop Loss contract as Healthnow. However, HealthNow is clearly not listed as a party to the contract and has not signed the contract.

Contract law does not allow the enforcement of a contract claim against a non-party. *HDR, Inc. v. Int'l Aircraft Parts, Inc.*, 257 A.D.2d 603, 604 (N.Y. App. Div. 1999) ("[n]either of these defendants was a party to the contract alleged to have been breached. As such, they cannot be bound by the contract (*see, National Survival Game v NSG of LI Corp.*, 169 AD2d 760."); *c.f. Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 11 (1988) (general rule that one who signs a contract is bound by its terms, even upon failure to read it). Contrary to plaintiff's contentions, the complaint does not allege any facts that could sustain a claim that HealthNow failed to follow the requirements of the contract on the theory that neither it, nor plaintiff, was submitting monthly reports, or that either failed to immediately submit information about the employee undergoing cancer treatment.[6] Thus, plaintiff's contract claims against HealthNow must be dismissed.

**ERISA Claims**

The Court has previously agreed with plaintiff's argument that the contract's waiver of ERISA's application is not determinative of plaintiff's ERISA claims against

---

[6]As explained in the Court's previous decision (Docket # 16), one of plaintiff's employees was hospitalized for cancer treatment in January 2000. This information was not provided to plaintiff's Stop Loss carrier, resulting in the denial of coverage for that employee's treatments.

defendants. *See* Decision and Order(# 16) (Sep. 15, 2004), at 7; 29 U.S.C. § 1002(21)(A) (definition of fiduciary). However, the Court is not persuaded that discovery will allow plaintiff to show that HealthNow was an ERISA fiduciary, or that it breached a fiduciary duty.

First, plaintiff is a New York Corporation evidently engaged in the beverage business. Plaintiff alleges no facts to show that it is a plan administrator, beneficiary, or participant. Plaintiff's lawsuit seeks not equitable relief, as allowed under ERISA, but money damages. As defendants correctly point out, plaintiff has not identified any particular section of ERISA under which it is claiming relief. When considering a similar issue, the Northern District of New York wrote,

> [u]nfortunately for plaintiff, neither § 1132(a)(2) nor § 1132(a)(3) allows an individual to recover damages. First, the Supreme Court has ruled that breach of fiduciary duty claims brought pursuant to § 1132(a)(2) inure to the plan, not to the individual beneficiary. *Massachusetts Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985). According to the Court, "neither the statute nor the legislative history [of § 1132(a)(2)] reveals a congressional intent to create a private right of action." *Id. Russell* therefore bars plaintiff from suing under § 1132(a)(2), since he seeks damages on his own behalf, rather than on behalf of the plan. *See Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993).
>
> Second, while § 1132(a)(3) confers standing upon individual beneficiaries or participants, it does so only to the extent that such individuals seek "appropriate equitable relief" for violations of ERISA. *Burkhart*, 991 F.2d at 1011. Money damages are generally unavailable under this section. *Id.*; *Alfarone v. Bernie Wolff Constr. Corp.*, 788 F.2d 76, 79 (2d Cir. (1986)), *cert. denied*, 479 U.S. 915 (1986). "The plain language of the statute does not provide for monetary relief and a review of the legislative history confirms that Congress did not contemplate that this phrase would include an award of money damages." *Burkhart*, 991 F.2d at 1011; *see also Novak v. Andersen Corp.*, 962 F.2d 757, 759-61 (8th Cir. 1992), *cert. denied*, 124 L. Ed. 2d 678 (1993) (reviewing legislative history of ERISA and concluding that § 1132(a)(3) does not authorize awards of money damages). Since plaintiff seeks monetary damages, rather than equitable relief, he is precluded under *Burkhart* from suing under § 1132(a)(3).

*McCabe v. Trombley*, 867 F. Supp. 120, 125-26 (N.D.N.Y. 1994).

Even assuming arguendo, the Court were to determine that plaintiff is suing in a fiduciary capacity for the benefit of the plan (a determination the Court specifically does not make from the evidentiary proof before it on this motion), plaintiff still would have to show that the suit fits under ERISA's civil enforcement section. *Id*. ERISA sets forth a comprehensive civil enforcement scheme that provides in pertinent part:

§ 1132.  Civil enforcement

(a) Persons empowered to bring a civil action. A civil action may be brought–

 (1) by a participant or beneficiary--

 (A) for the relief provided for in subsection (c) of this section [concerning the administrator's refusal to supply requested information], or

 (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

 (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409 [29 U.S.C. § 1109] [breach of fiduciary duty];

 (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. . . .

29 U.S.C. § 1132(a) (2004). The only possible fit here would be under paragraph (2), authorizing a suit under section 409, which provides, in pertinent part,

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109 (2004). ERISA contains the following definition of a fiduciary:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. . . .

29 U.S.C. § 1002(21)(A). Although the Ninth Circuit has held that stop-loss checks issued by a stop-loss insurer were plan assets for a self-insured plan, *see Patelco Credit Union v. Sahni*, 262 F.3d 897, 908 (9th Cir. 2001), the Court has found no case directly holding that a stop-loss *insurer* is automatically a plan fiduciary. In fact, the Court's research has revealed case law contrary to plaintiff's position in this case: *Union Health Care, Inc. v. John Alden Life Ins. Co.*, 908 F. Supp. 429 (S.D. Miss. 1995) (stop-loss insurer not a fiduciary under ERISA); *Capital Mercury Shirt Corp. v. Employers Reinsurance Corp.,* 749 F. Supp. 926, 931 (W.D. Ark. 1990) (settlor's lawsuit sought to recover damages for it, not the plan, thus it did not allege breach of fiduciary duty under the plan).

Evaluating plaintiff's allegations in light of the requirements of ERISA's fiduciary definition, the Court finds that plaintiff cannot prove any set of facts that would entitle it to relief on its claim that HealthNow is a fiduciary under ERISA. HealthNow is neither a beneficiary, participant, or plan administrator; it does not exercise any discretionary authority or discretionary control respecting management of the plan; it does not

exercise any authority or control respecting management or disposition of plan assets[7]; it does not render investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, nor does HealthNow have any authority or responsibility to do so; and it does not have any discretionary[8] authority or discretionary responsibility in the administration of the plan.

## CONCLUSION

For the foregoing reasons, HealthNow is entitled to summary judgment. Its application (# 20) is granted and the complaint against HealthNow is dismissed. Inasmuch as the Court has previously dismissed the other two defendants, the Clerk is directed to issue judgment for HealthNow and close this case.

Dated:  July 22, 2005
        Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[7]Reasoning from the Ninth Circuit's decision in *Sahni*, the Court could not find that plaintiff's claim on the contract constituted an asset over which HealthNow had control, such that it should be considered a plan fiduciary. Had HealthNow issued a check, and, for example, sent it to the wrong individual, then the Ninth Circuit's decision would clearly apply. However, those are not the factual allegations here.

[8]HealthNow does have the authority to deny claims for benefits under the plan, but is not the final authority. The plan documents reserve that right to plaintiff. Thus, HealthNow does not obtain fiduciary status as a result of this ministerial function. *See Mortgage Lenders Network USA, Inc. v. CoreSource, Inc.*, 335 F. Supp.2d 313, 319 (D. Conn. 2004); *c.f. Semmler v. Metropolitan Life Ins.*, No. 94 Civ. 5549 (WK), 1995 WL 559390, *13 (S.D.N.Y. Sep. 20, 1995) ("insurance company which was not named as an ERISA fiduciary by the plan, but which had the power to make final decisions with regard to approved benefits claims under such plan, was an ERISA fiduciary") (citation omitted).